UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| **AARON WOMACK**, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | DOCKET NO. ___7:19-cv-74_____ |
| **SUPERIOR ENERGY SERVICES-NORTH AMERICA SERVICES, INC. d/b/a INTEGRATED PRODUCTION SERVICES, INC.**, | § § § § | JURY TRIAL DEMANDED  FLSA COLLECTIVE ACTION |
| Defendant. | § § § | |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Aaron Womack ("Womack" or "Plaintiff") brings this lawsuit to recover unpaid overtime wages and other damages from Superior Energy Services-North America Services, Inc. d/b/a Integrated Production Services, Inc. ("IPS" or "Defendant") under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq*.

2.      During the relevant time period, IPS utilized the services of Flowback Operators like Womack to work on its behalf.

3.      Many of the Flowback Operators IPS employed, including Womack, were staffed to IPS by third-party entities.

4.      Womack, and the other Flowback Operators like him who worked for, or on behalf of IPS, regularly worked more than 40 hours a week.

5.      But IPS did not pay Womack or the other Flowback Operators overtime.

6.      Instead of paying overtime as required by the FLSA, IPS improperly classified these workers as independent contractors and paid them a daily rate with no overtime compensation in violation

of the FLSA.

7.      Womack brings this collective action to recover the unpaid overtime wages and other damages owed to him and other Flowback Operators like him.

## JURISDICTION & VENUE

8.      This Court has original subject matter jurisdiction because this case presents a federal question. 29 U.S.C. § 216(b); 28 U.S.C. § 1331. This Court also has federal jurisdiction pursuant to the jurisdictional provisions of the Class Action Fairness Act. 28 U.S.C. § 1332(d).

9.      Venue is proper under 28 U.S.C. § 1391(b)(2) since a substantial part of the events giving rise to this claim occurred in this District and Division.

## PARTIES

10.     From approximately September 2017 until February 2018, Womack worked for IPS as a Flowback Operator.

11.     Throughout his employment, IPS paid Womack a day rate with no overtime compensation and classified him as an independent contractor.

12.     Womack's consent to be a party plaintiff is attached as Exhibit A.

13.     Womack brings this action on behalf of himself and all other similarly situated Flowback Operators who worked for, or on behalf of IPS, who were classified as independent contractors and paid a day rate with no overtime compensation.

14.     Womack and the Flowback Operators like him were paid a flat amount for each day worked and did not receive overtime for all hours that they worked over 40 hours in a workweek in accordance with the FLSA.

15.     The class of similarly situated employees or Putative Class Members sought to be certified is defined as follows:

> **All Flowback Operators who worked for, or on behalf of IPS, who were classified as independent contractors and paid a day rate**

**during the last 3 years.**

16.     IPS is a Delaware corporation and may be served through its registered agent: **C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136, USA**, or wherever it may be found.

### COVERAGE UNDER THE FLSA

17.     At all times hereinafter mentioned, Defendant has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18.     At all times hereinafter mentioned, Defendant has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

19.     At all times hereinafter mentioned, Defendant has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

20.     Defendant has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as oilfield equipment, hand tools, computers, automobiles, and cell phones.

21.     Defendant's annual gross volume of sales has exceeded $500,000.00 in each of the past 3 years.

22.     At all relevant times hereinafter mentioned, Womack and the other Flowback Operators like him were engaged in commerce or in the production of goods for commerce.

23.     At all relevant times hereinafter mentioned, IPS treated Womack (and indeed each of the Flowback Operators like him) as an employee and uniformly applied its illegal day rate pay practice to Womack and the Flowback Operators like him.

24.     The misclassification of Womack and the other Flowback Operators like him as

independent contractors does not alter their status as employees for purposes of this FLSA collective action.

FACTS

25.    IPS is North America's leading provider of coiled tubing, nitrogen, and plunger lift services and products with an operational presence in every basin around the United States. *See* http://ipsadvantage.com/index.html (last visited March 1, 2019).

26.    To provide services to many of its customers, IPS retains workers (including Flowback Operators) to perform services on its behalf.

27.    During the relevant period, IPS contracted with third-party entities to provide it with oilfield personnel to work for it or on its behalf, including Flowback Operators like Womack.

28.    IPS and the third-party entities who staffed oilfield personnel to IPS to work for or on its behalf jointly determine and share control over the terms and conditions of employment.

29.    IPS and the third-party entities who staffed oilfield personnel to IPS to work for or on its behalf jointly hired and fired, supervised and controlled, set pay, determined hours, and approved time sheets with respect to these workers.

30.    IPS is a joint employer of the oilfield personnel staffed to it by the third-party entities.

31.    Many of the Flowback Operators staffed to IPS, including Womack, were paid on a day rate basis, misclassified as independent contractors, and make up the proposed Putative Class.

32.    Even if their job titles and precise job duties differed, IPS subjected Womack and the other Flowback Operators like him to the same or similar illegal pay practices for similar work.

33.    Specifically, IPS classified all the Flowback Operators as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

34.    IPS uniformly failed to pay overtime for the overtime hours Womack and the other

- 4 -

Flowback Operators like him worked.

35.     For example, from approximately September 2017 until February 2018, Womack worked for IPS as a Flowback Operator.

36.     Throughout his employment, IPS classified Womack as an independent contractor and paid him on a day rate basis.

37.     IPS directed Womack to work 12 (or more) hours a day for as many as 7 days in a week.

38.     Womack worked well in excess of 40 hours each week while employed by IPS, often for weeks at time.

39.     The work Womack performed was an essential part of IPS's core business.

40.     During Womack's employment with IPS and while he was classified as an independent contractor, IPS exercised control over all aspects of his job.

41.     IPS did not require any substantial investment by Womack for him to perform the work required of him.

42.     IPS controlled Womack's opportunity for profit and loss by dictating the days and hours he worked and the rate he was paid.

43.     Womack was not required to possess any unique or specialized skillset (other than that maintained by all other workers in his respective position) to perform his job duties.

44.     Womack worked exclusively for IPS as an independent contractor from approximately September 2017 until February 2018.

45.     While working for IPS, IPS controlled all the significant or meaningful aspects of the job duties performed by Womack.

46.     IPS exercised control over the hours and locations Womack worked, tools and equipment used, and rates of pay received.

47.     Womack was not required to make a real investment to perform his job.

48. More often than not, Womack utilized equipment provided by IPS to perform his job duties.

49. Womack did not provide the significant equipment he worked with on a daily basis. IPS made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Womack worked.

50. For instance, IPS notes that it has "one of the largest CT fleets in the country, equipped with modern fit-for-purpose technology." *See* http://ipsadvantage.com/index.html (last visited March 1, 2019).

51. Womack did not incur operating expenses like rent, payroll, marketing, and insurance.

52. Womack was economically dependent on IPS during his employment with IPS.

53. IPS set Womack's rates of pay, his work schedule, and effectively prevented (or outright prohibited) him from working other jobs for other companies while he was working on jobs for IPS.

54. IPS directly determined Womack's opportunity for profit and loss.

55. Womack's earning opportunity was based on the number of days IPS scheduled him to work.

56. Very little skill, training, or initiative was required of Womack to perform his job duties.

57. Indeed, the daily and weekly activities of the Flowback Operators were routine and largely governed by standardized plans, procedures, and checklists created by IPS.

58. Virtually every job function was pre-determined by IPS, including the tools and equipment to use at a job site, the data to compile, the schedule of work, and related work duties.

59. The Flowback Operators were prohibited from varying their job duties outside of the pre-determined parameters and were required to follow IPS's policies, procedures, and directives.

60. Womack performed routine job duties that were largely dictated by IPS.

61. Womack worked exclusively for IPS from approximately September 2017 until February

2018.

62.    Womack was not employed by IPS on a project-by-project basis.

63.    In fact, while Womack was classified as an independent contractor, he was regularly on call for IPS and was expected to drop everything and work whenever needed.

64.    All of the Flowback Operators working for, or on behalf of IPS, perform similar job duties and are subjected to the same or similar policies and procedures, which dictate the day-to-day activities performed by each person, regardless of the third-party entity they were staffed through.

65.    All of the Flowback Operators working for, or on behalf of IPS, also worked similar hours and were denied overtime as a result of the same illegal pay practice, regardless of the third-party entity they were staffed through.

66.    All of the Flowback Operators working for, or on behalf of IPS, all worked in excess of 40 hours each week and were often scheduled to work 12 hour shifts for weeks at a time, regardless of the third-party entity they were staffed through.

67.    Instead of paying them overtime, IPS paid Womack and the other Flowback Operators like him a day rate and misclassified them as independent contractors.

68.    IPS denied Womack and the other Flowback Operators like him overtime for hours worked in excess of 40 hours in a single workweek.

69.    Womack and the other Flowback Operators like him were never paid on a salary basis. They never received any guaranteed weekly compensation from IPS irrespective of days worked (i.e., the only compensation they received was the day rate they were assigned for all hours worked in a single day or week).

70.    IPS's policy of classifying Womack and the other Flowback Operators like him as independent contractors and failing to pay them overtime, violates the FLSA because these workers are, for all purposes, non-exempt workers.

71.    It is undisputed that the Flowback Operators are working long hours in the field.

72.    Because Womack and the other Flowback Operators like him were misclassified as independent contractors by IPS, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

73.    IPS's day rate system violates the FLSA because Womack and the other Flowback Operators like him did not receive any overtime pay for hours worked over 40 hours each week.

## FLSA VIOLATIONS

74.    As set forth herein, Defendant has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees for workweeks longer than 40 hours without paying them overtime.

75.    Defendant knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Womack and the other Flowback Operators like him overtime compensation.

76.    Defendant's failure to pay overtime compensation to these workers was neither reasonable, nor was the decision not to pay overtime made in good faith.

77.    Accordingly, Womack and the other Flowback Operators like him are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorneys' fees and costs.

## COLLECTIVE ACTION ALLEGATIONS

78.    The illegal pay practices Defendant imposed on Womack were likewise imposed on the other Flowback Operators like him, including those working for, or on behalf of IPS, through third-party entities or otherwise.

79.    Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

80.    Numerous other individuals who worked with Womack as Flowback Operators indicated they too were improperly classified as independent contractors, paid in the same manner, performed

similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

81.     Based on his experiences and tenure with IPS, Womack is aware that such illegal practices were imposed on the members of the Putative Class.

82.     Womack and the other Flowback Operators like him were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty 40 per week.

83.     IPS's failure to pay wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of any of the Flowback Operators like Womack.

84.     Womack's experiences are therefore typical of the other Flowback Operators who worked for, or on behalf of, IPS.

85.     The specific job titles or precise job locations of the various members of the Putative Class do not prevent class or collective treatment.

86.     Womack has no interests contrary to, or in conflict with, the members of the Putative Class. Like each member of the Putative Class, Womack has an interest in obtaining the unpaid overtime wages owed under federal law.

87.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

88.     Absent this action, many members of the Putative Class likely will not obtain redress of their injuries and IPS will reap the unjust benefits of violating the FLSA.

89.     Furthermore, even if some of the members of the Putative Class could afford individual litigation against IPS, it would be unduly burdensome to the judicial system.

90.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the Putative Class and provide for judicial consistency.

91.    Womack's claims are similar to the claims of the other Flowback Operators who worked for, or on behalf of, IPS who were classified as independent contractors and paid a day rate with no overtime compensation. Womack and the other Flowback Operators like him sustained damages arising out of IPS's illegal and uniform employment policy.

92.    Womack knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

93.    Even if the number of hours worked by the Flowback Operators like Womack varies, the proof and method for calculating damages is common.

94.    Further, there is no detraction from the common nucleus of liability facts.

## JURY DEMAND

95.    Womack demands a trial by jury.

## RELIEF SOUGHT

96.    WHEREFORE, Womack prays for judgment against Defendant as follows:

a.    An order allowing this action to proceed as a collective action under the FLSA and directing notice to all Flowback Operators who worked for, or on behalf of, IPS who were classified as independent contractors and paid a day rate with no overtime compensation in the last three years;

b.    For an Order pursuant to Section 16(b) of the FLSA finding Defendant liable for unpaid back wages due to Womack and the Flowback Operators like him for liquidated damages equal in amount to their unpaid compensation;

c.    For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

d.  For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Andrew W. Dunlap*

**Michael A. Josephson**
State Bar No. 24014780
**Andrew W. Dunlap**
State Bar No. 24078444
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

**AND**

Richard J. (Rex) Burch
State Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**